UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

BOBBY KENNETH WILLIAMSON,   :
:
        **Plaintiff**            :     CIVIL ACTION NO. 1:24-1777
:
      v.                             (JUDGE MANNION)
:
**WELLPATH F/K/A CORRECT**
**CARE SOLUTIONS, LLC, *et al.*,**   :
:
        **Defendants**         :

## MEMORANDUM

This is a prisoner civil rights case filed pursuant to 42 U.S.C. §1983 in which plaintiff alleges civil rights violations arising from an alleged failure to promptly diagnose an e. coli infection. The complaint will be dismissed with prejudice.

**I.   BACKGROUND**

Plaintiff, Bobby Kenneth Williamson, filed this case on October 17, 2024. (Doc. 1). The case was initially assigned to United States District Judge Christopher C. Conner. The case was reassigned to the undersigned on January 21, 2025, following Judge Conner's retirement from the court. On February 6, 2025, the court issued an order staying the case because one of the defendants, Wellpath LLC, had filed for bankruptcy in the United States Bankruptcy Court for the Southern District of Texas, and the case was

therefore subject to an automatic stay under 11 U.S.C. §362(a)(1). (Doc. 10). On March 3, 2025, Williamson moved to lift the stay. (Doc. 11).

On May 1, 2025, the bankruptcy court issued an order approving Wellpath's Chapter 11 plan of reorganization. *See In re Wellpath Holdings, Inc.*, No. 24-90533, Doc. 2596 (Bankr. S.D. Tex. May 1, 2025). Accordingly, because the case is no longer subject to an automatic bankruptcy stay, the court will lift the stay and proceed to a screening review of Williamson's complaint pursuant to 28 U.S.C. §1915A(a) and 28 U.S.C. §1915(e)(2)(B)(ii).

According to the complaint, Williamson was initially incarcerated in SCI-Huntingdon from 1998 to 2001, and experienced numerous medical issues during that time.[1] (*See generally* Doc. 1 at 4-6). After approximately nineteen years, Williamson was transferred back to SCI-Huntingdon on December 24, 2020. (*Id.* at 8). On January 7, 2021, he began experiencing a burning sensation, frequent urination, chills, joint pains, headaches, sweating, and loss of appetite. (*Id.* at 7). Williamson was seen for a medical appointment with defendant Nalley, a physician's assistant in the prison, on

---

[1] The complaint appears to allege civil rights violations based on inadequate medical care during this period, but because these claims are patently untimely the court will not summarize facts related to this period in the interest of judicial economy. *See, e.g., Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017) (noting that civil rights claims arising from conduct in Pennsylvania are subject to Pennsylvania's two-year statute of limitations for personal injury actions).

2

January 12, 2021. (*Id.*) Nalley obtained a urine sample from Williamson and sent the sample for laboratory testing due to its "dark ember" color and "slight concentration." (*Id.*) Nalley and other medical staff prescribed Williamson Cipro and Pyridium to treat the infection. (*Id.*)

Williamson returned to the medical department on January 27, 2021, with symptoms of frequent urination, burning while urinating, and feeling the urge to urinate but being unable to do so. (*Id.*) Medical staff inserted a catheter, but removed it after learning that his bladder was empty. (*Id.*) Defendant Mahli, a doctor in the prison, advised Williamson to start on his prescribed Cipro and Pyridium and advised him to drink lots of water. (*Id.*) Twenty-four hours later, Williamson experienced hypotension, tachychardia, a feeling of tiredness, and pain in his abdomen. (*Id.*) Mahli and Nalley continued the treatment of Cipro and Pyridium. (*Id.*)

On January 31, 2021, Williamson was given medical attention after he reported chills, dizziness, and difficulty maintaining his balance. (*Id.*) He reported to medical staff that he was experiencing burning and urgent urination. (*Id.*) Nalley ordered another urine test, which revealed traces of leukocytes. (*Id.* at 7-8).

Williamson returned to the medical department on April 4, 2021, with complaints of "sorts [sic]" during urination. (*Id.* at 8). The medical staff noted

that his complaints of burning during urination suggested a recurring urinary tract infection ("UTI"). (*Id.*) Mahli and Nalley ordered further testing on Williamson's kidneys. (*Id.*) Three days later, a nurse practitioner in the prison who is not named as a defendant ordered an ultrasound due to the recurring UTIs and pain. (*Id.*) Williamson informed Nahli and Malley that he had experienced UTIs during his previous incarceration in SCI-Huntingdon, but had not experienced them in the intervening two decades. (*Id.*) Williamson requested a medical transfer to another prison, but his request was denied. (*Id.*)

On July 4, 2021, Williamson spoke with Nalley and reported "gross blood" from his penis during urination after exercising. (*Id.*) Nalley prescribed Cipro and directed Williamson to follow up as needed. (*Id.*) Williamson again requested a medical transfer on July 6, 2021. (*Id.* at 8-9). He then spoke with defendants Nalley, Mahli, and Talasky on July 8, 2021, for a follow-up appointment on his UTIs. (*Id.*) Medical notes from the appointment indicated that they would continue him on a lower dose of antibiotics after he finished the prescribed course of Cipro and that he would have a follow-up appointment with a urologist. (*Id.*)

On August 31, 2021,[2] Williamson was taken to the medical department with complaints of a UTI. (*Id.*) He received medical care from Nalley, Talaskey, and Mahli on that date, and follow-up care from September 3, 2021, from Nalley. (*Id.*) He then returned to the medical department on September 13, 2021, with additional complaints of a UTI. (*Id.* at 9-10). He was seen for follow-up care with Mahli and a registered nurse who is not named in this lawsuit the following day. (*Id.*) Williamson complained of UTI symptoms again on November 11, 2021. (*Id.*) He received follow-up care in November 2021, December 2021, and February 2022. (*Id.*)

On June 5 and June 6, 2022, Williamson complained to Mahli, Nalley, and Talaskey about severe burning during urination. (*Id.*) Mahli transferred Williamson to an outside emergency room on June 6, 2022. (*Id.* at 11). Medical records from the emergency room indicated that Williamson had a UTI and possible epididymo-orchitis. (*Id.*) Williamson remained in the hospital for two days. (*Id.*) Williamson complained of additional UTIs on August 21, 2022, and September 26, 2022. (*Id.* at 12). Nalley prescribed Bactrim to treat the September infection. (*Id.*) On October 2, 2022, Nahli

---

[2] The complaint states that this occurred on August 31, 2022, but this appears to be a typographical error because the complaint alleges follow-up care occurring in September 2021. (*See id.*)

diagnosed him with a chronic UTI caused by e. coli. (*Id.* at 13). He prescribed Bactrim to treat it and scheduled him for follow-up care in 3-4 weeks. (*Id.*)

On October 1, 2022,[3] Mahli called Williamson to his office and told him that he had e. coli and that they had been prescribing the wrong antibiotics to treat his UTIs. (*Id.* at 16). Mahli changed his prescription to Sulfatrim. (*Id.*) Since this prescription has been changed, Williamson has not had any recurrence of his UTIs. (*Id.*)

Williamson filed a grievance about his medical care four days after Mahli changed his prescription to Sulfatrim. (*Id.*) Williamson's administrative exhaustion procedure allegedly continued until January 30, 2023, when his final appeal to the Pennsylvania Department of Corrections' Secretary's Office of Inmate Grievances and Appeals ("SOIGA") denied his appeal. (*Id.*)

The complaint asserts claims for negligence and deliberate indifference against Wellpath, Mahli, Nalley, and Talaskey based on his allegedly deficient medical care. (*Id.* at 18-21). Williamson seeks damages. (*Id.*)

---

[3] The complaint states that this occurred on October 1, 2021, but the year appears to be a typographical error because the surround allegation suggest that the complaint is referring to events in October 2022. (*See id.*) Additionally, the sequence of events is somewhat unclear from the complaint because it alleges that Mahli prescribed him Bactrim on October 2, 2022, but switched the prescription to Sulfatrim the day before that. (*See id.*) The court has stated the dates as they appear in the complaint.

6

## II.   DISCUSSION

### A.   Screening

This court must review a complaint when "a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. §1915A(a). If a complaint fails to state a claim upon which relief may be granted, the court must dismiss the complaint. *Id.* §1915A(b)(1). The court has a similar screening obligation regarding actions filed by prisoners proceeding *in forma pauperis. Id.* §1915(e)(2)(B)(ii) ("[T]he court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim on which relief may be granted.").

In screening legal claims under Sections 1915A(b) and 1915(e)(2)(B), the court applies the standard governing motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See, e.g., Coward v. City of Philadelphia*, 546 F. Supp. 3d 331, 333 (E.D. Pa. 2021); *Smith v. Delaware*, 236 F. Supp.3d 882, 886 (D. Del. 2017).

To avoid dismissal under Rule 12(b)(6), a plaintiff must set out "sufficient factual matter" to show that the claim is facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct. "[W]here the well-pleaded facts do not permit the court to infer more than the

7

mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679.

When evaluating the plausibility of a complaint, the court accepts as true all factual allegations and all reasonable inferences that can be drawn from those allegations, viewed in the light most favorable to the plaintiff. *Id.* However, the court must not accept legal conclusions as true, and "a formulaic recitation of the elements of a cause of action" will not survive a district court's screening under Section 1915A and 1915(e)(2). *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

Courts must liberally construe complaints brought by *pro se* litigants. *Sause v. Bauer*, 585 U.S. 957, 960 (2018). *Pro se* complaints, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Plaintiff's claims are filed pursuant to 42 U.S.C. §1983. Section 1983 authorizes redress for violations of constitutional rights and provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an

8

>action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. §1983. Thus, to establish a successful claim under Section 1983, a plaintiff must demonstrate that the challenged conduct was committed by a person acting under color of state law and deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Lake v. Arnold*, 112 F.3d 682, 689 (3d Cir. 1997). By its terms, Section 1983 does not create a substantive right, but merely provides a method for vindicating federal rights conferred by the United States Constitution and the federal statutes that it describes. *Baker v. McCollan*, 443 U.S. 137 (1979).

A defendant cannot be liable for a violation of a plaintiff's civil rights unless the defendant was personally involved in the violation. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 289 (3d Cir. 2018). The defendant's personal involvement cannot be based solely on a theory of *respondeat superior*. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, for a supervisor to be liable for the actions of a subordinate, there must be allegations of personal direction or actual knowledge and acquiescence. *Id.*

Williamson's deliberate indifference and negligence claims are based on allegations that defendants failed to properly diagnose his e. coli infection that was causing his recurring UTIs. (Doc. 1 at 18-21). These claims will be

9

dismissed. There is simply no basis to conclude that defendants were deliberately indifferent to a serious medical need or negligent in failing to diagnose the basis of Williamson's UTIs. It is clear from the four corners of the complaint that the defendants promptly treated every one of Williamson's UTIs and ordered frequent lab testing to try to diagnose the cause of the UTIs. Defendants also promptly changed Williamson's prescription to an appropriate antibiotic to treat his e. coli infection upon learning that this was the cause of the infections. Although it is regrettable that the cause of Williamson's UTIs was not discovered sooner, this delay is not attributable to deliberate indifference or negligence by defendants.

### B.   Leave to Amend Will Be Denied

Before dismissing a civil rights claim for failure to state a claim, a district court must permit a curative amendment unless the amendment would be inequitable or futile. *Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008). The court will deny leave to amend as futile in the instant case. There does not appear to be any additional facts that could be alleged in an amended complaint that could make the complaint state a claim upon which relief may be granted. It is clear from the face of the complaint that defendants provided prompt medical care for Williamson's UTIs and

exercised reasonable professional care in trying to determine the cause of his UTIs.

### III. CONCLUSION

For the foregoing reasons, the court will dismiss plaintiff's complaint with prejudice and close this case. An appropriate order shall issue.

*[signature]*

**Malachy E. Mannion**
**United States District Judge**

**Dated:** 10/21/25
24-1777-01